Receipt number AUSFCC-9399539

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

RODNEY L. DAVIS, THOMAS M. DAVIS, III,   )
EDWIN G. PERLMUTTER,   )
ERIC A. CRAWFORD,   )
and all others similarly situated,   )
   )
     Plaintiffs,   )
   )   Case ___ 24-364 C
v.   )
   )
UNITED STATES   )
   )
     Defendant.   )

## COMPLAINT

Plaintiffs allege as follows:

I.    Introduction

1. When, in the summer of 1789, James Madison proposed what became the Twenty-Seventh Amendment of the United States Constitution, the primary concern expressed by the Members who spoke to the proposal was their concern about the inordinate danger of the suppression (not raising) of Congressional wages and the resulting damage such suppression would cause to Congress by denying to voters the chance to have the representatives of their choice, regardless of the means of such individuals, and by the use of pay cuts as a way of 'showing off' to voters at the expense of the institution.[1]

2. This action concerns the very subject that the first Congress sought to address in 1789 when it initially proposed what became the Twenty-Seventh Amendment.[2] The periodic

---

[1] *See*, Debates in the House of Representatives (Aug. 14, 1789), in *The Congressional Register*, Aug. 14, 1789, reprinted in *Creating the Bill of Rights: The Documentary Record from the First Federal Congress*, 149-50 (Helen E. Veit et al. eds., 1991).

[2] Upon Michigan's ratification of the proposed amendment in 1992, it became what is now known as the Twenty-Seventh Amendment to the U.S. Constitution.

suppression of Congressional Representatives' pay from January 1, 1994 to the present day violates the Twenty-Seventh Amendment's plain terms prohibiting laws "varying" congressional compensation without an intervening congressional election.  Almost all of the laws suppressing congressional pay since 1992 have taken effect without an intervening election between the time those laws were enacted and when they took effect.  Those underpayments have also suppressed the retirement payments made to qualifying former Members of Congress.[3]

3.   Plaintiffs, from both major political parties, have all served in Congress for various periods of time during the relevant period, suffering the unconstitutional suppression of their member pay, and the former Members continue to suffer the unconstitutional reduction of the retirement pay due them by law.

II.   Jurisdiction and Amount In Controversy

4.   Jurisdiction and venue are appropriate in this Court pursuant to the Twenty-Seventh Amendment to the United States Constitution and 28 U.S.C. § 1491(a).

5.   The amount in controversy in this case exceeds $5,000,000, exclusive of interest and costs.

III.   Parties

6.   Plaintiff Rodney L. Davis represented Illinois' 13th Congressional District as a Republican Member from January 3, 2013 until January 2, 2023.  Representative R. Davis had previous federal service as professional staff in the United States House of Representatives.  During his tenure in Congress, Representative R. Davis was selected by his colleagues to serve as Ranking Member of the Committee on House Administration and as a member of the

---

[3] For purposes of the Complaint, both "Congressional Representatives" and "Members of Congress" refer to Representatives and Senators collectively.

Select Committee on the Modernization of Congress.  In addition to the congressional salary he received during his time in office, Representative R. Davis also now receives a federal pension under the Federal Employee Retirement System ("FERS"),[4] and he contributed to the Thrift Savings Plan for which he is eligible, with certain matching payments made by the federal government.

7.   Plaintiff Thomas M. Davis, III, represented Virginia's 11th Congressional District as a Republican Member from January 3, 1995 until November 24, 2008.  Representative T. Davis had previous federal service as a U.S. Senate Page, and in the U.S Army, the Army Reserve and the Virginia National Guard.  Representative T. Davis continues to reside in the Commonwealth of Virginia.  During his tenure in Congress, Representative T. Davis was selected by his Republican colleagues to serve as Chairman of the National Republican Congressional Committee, and he served as Chairman of the House Committee on Government Reform (now the Committee on Oversight and Accountability).  In addition to the congressional salary he received during his time in office, Representative T. Davis also now receives a federal pension under the FERS, and he contributed to the Thrift Savings Plan for which he was eligible, with certain matching payments made by the federal government.

8.   Plaintiff Edwin G. "Ed" Perlmutter represented Colorado's 7th Congressional District as a Democratic Member from January 3, 2007 to January 3, 2023.  During his tenure in Congress, Representative Perlmutter served on several committees, including the Committee on Financial Services where he chaired the subcommittee on Financial Institutions and Consumer Protection, the Committee on Rules and the Select Committee

---

[4] *See generally*, 5 U.S.C. § 8401 *et seq*.

on the Modernization of Congress.  In addition to the congressional salary he received during his time in office, Representative Perlmutter also now receives a federal pension under the FERS, and he contributed to the Thrift Savings Plan for which he was eligible, with certain matching payments made by the federal government.

9. Plaintiff Eric A. "Rick" Crawford represents Arkansas' 1st Congressional District as a Republican Member, serving from January 3, 2013 until the present.  Representative Crawford had previous federal service in the United States Army.  During his tenure in Congress, Representative Crawford was appointed by the Speaker of the House to serve on the House Permanent Select Committee on Intelligence, on which he serves as Chairman of the Subcommittee on Central Intelligence. Additionally, he serves on the House Committee on Transportation and Infrastructure, on which he serves as Chairman of the Subcommittee on Highways and Transit. From his congressional salary, Representative Crawford contributes to the Thrift Savings Plan for which he is eligible, with certain matching payments made by the federal government.

10. Defendant United States of America is the federal government as established by the United States Constitution.  In addition, actions relevant to this lawsuit were taken by the U.S. Senate, the House of Representatives, and the Office of Personnel Management.  For those three entities, the following is true:

    a. Sonceria Berry is the Secretary of the United States Senate ("Berry" or "Secretary"), who controls the payment of salaries to members of the U.S. Senate. Secretary Berry is officed at The U.S. Senate, Office of the Secretary, Disbursing Office, Washington, D.C. 20510.

b.  Catherine Szpindor is the Chief Administrative Officer for the House of Representatives ("Szpindor" or "CAO"), who controls the payment of salaries to members of the House of Representatives.  CAO Szpindor is officed at Room H.B-28, U.S. Capitol, First St., SE, Washington, D.C., 20004.

c.  Kiran Ahuja is the Director of the Office of Personnel Management ("Ahuja" or "Director"), which controls the payment of retirement benefits to former members of Congress.  Director Ahuja is officed at the Theodore Roosevelt Federal Building, at 1900 E Street, N.W., Washington, D.C. 20006.

IV.   <u>History of the Controversy</u>

11. On June 8, 1789, Representative James Madison proposed 19 amendments to the Constitution, the second of those nineteen proposed amendments stated: "No law, varying the compensation for the services of the Senators and Representatives, shall take effect, until an election of Representatives shall have intervened."  On September 25, 1789, Congress submitted the proposed amendment to the states for ratification.  Almost 203 years later, on May 7, 1992, Michigan became the 38th state to ratify the amendment, thus making it the Twenty-Seventh Amendment to the U.S. Constitution.[5]

12. Among the concerns the Twenty-Seventh Amendment addressed was that congressional pay not be so low that individuals of ability would be foreclosed from congressional service, and to prevent abuses of the compensation power from Congress abasing itself by

---

[5] Representative James Madison submitted his proposal for 19 amendments to the U.S. Constitution on June 8, 1789.  The House of Representatives approved 17 of the amendments and sent them to the U.S. Senate, which in turn approved 12 of the amendments on September 25, 1789, and they were sent to the states for ratification.  10 of those amendments were ratified by the states on December 15, 1791, and today we refer to those 10 amendments as The Bill of Rights.

lowering its own wages, a practice the American Founders had observed in the British Parliament. *See generally, The Sleeper Wakes: The History and Legacy of the Twenty-Seventh Amendment*, 61 FORDHAM L. REV. 497, 526-27 (Dec. 1992).

13. In 1989, Congress passed, and President H.W. Bush signed, the Ethics Reform Act, which, among other things, barred House Members from receiving most outside income, and instead set a formula to apply annual cost of living adjustments ("COLAs") to their salaries. Two years later, the Ethics Reform Act COLAs were applied to Senators, as they too, forewent other outside income. Shortly thereafter, the Ethics Reform Act COLAs were found by the D.C. Circuit Court of Appeals not to violate the Twenty-Seventh Amendment, as the requirements of the Amendment had been complied with. *Boehner v. Anderson*, 30 F.3d 156, 162 (D.C. Cir. 1994).

14. Unaddressed by the *Boehner* court were the circumstances of this case, namely, the reduction of Congressional salaries without an intervening election. On 21 different occasions since the 1992 ratification of the Twenty-Seventh Amendment, Congress and/or the President have taken action to effectively reduce the pay owed to Representatives and Senators in a manner that violated the Twenty-Seventh Amendment, and the cumulative effect continues to this day for both current and former Members.

V.   Facts of this Case

15. For 21 of the 32 calendar years since the Twenty-Seventh Amendment's 1992 ratification, Congress and the President have unconstitutionally suppressed COLAs that should have been applied to congressional pay. In each case, the suppression of the statutory COLAs was enacted and implemented without an intervening election, as required by the Amendment's plain terms. *See Boehner* at 161-62 ("Our understanding of the [Twenty-

Seventh Amendment] is [that] it conditions the operation of a law varying congressional compensation upon an election of Representatives and the expiration of the Congress that voted for it…. [Thus,] the minimum period between enactment and effect is the first Monday in November of an even-numbered year (i.e., the Monday before an election) until the new Congress is seated the following January.").[6]

    a.   The 1994 COLA was unconstitutionally suppressed in Public Law (hereafter "PL") 103-6, enacted on March 4, 1993 and implemented on January 1, 1994, without an intervening election.

    b.   The 1995 COLA was unconstitutionally suppressed in PL 103-329, enacted on September 30, 1994, after the 1994 election had commenced in multiple states, and implemented on January 1, 1995. Thus, the pay suppression occurred without an intervening election.

    c.   The 1996 COLA was unconstitutionally suppressed in PL 104-52, enacted on November 19, 1995 and implemented on January 1, 1996, without an intervening election.

    d.   The 1997 COLA was unconstitutionally suppressed in PL 104-208, enacted on September 30, 1996, after the 1996 election had commenced in multiple states, and

---

[6] Plaintiffs' position is that an "election" is the entire period in which voters anywhere in America may cast their ballots for their next Representative or Senator. Thus, legislation varying Congressional pay must be enacted prior to the first day in which voters in the earliest state may vote, coupled with a requirement that any such enactment may not be implemented until the seating of the next Congress. Upon information and belief, the legislation suppressing the COLAs due the following calendar year that was enacted after the commencement of an election, but prior to the conclusion of that election on the Tuesday following the second Monday of November affects COLAs in four calendar years: 1995, 1997, 1999, and 2019.

implemented on January 1, 1997. Thus, the pay suppression occurred without an intervening election.

e.   The 1999 COLA was unconstitutionally suppressed in PL 105-277, enacted on October 21, 1998, after the 1998 election had commenced in multiple states, and implemented on January 1, 1999. Thus, the pay suppression occurred without an intervening election.

f.   The 2007 COLA was unconstitutionally suppressed in PL 109-383, enacted on December 8, 2006, and PL 110-5, enacted on February 15, 2007, and implemented effective on January 1, 2007, without an intervening election.[7]

g.   Upon information and belief, the 2008 COLA was unconstitutionally suppressed in Executive Order 13,454, executed on January 4, 2008, and implemented effective January 1, 2008, without an intervening election.[8]

h.   The 2010 COLA was unconstitutionally suppressed in PL 111-8, enacted on March 11, 2009 and implemented on January 1, 2010, without an intervening election.

i.   The 2012 COLA was unconstitutionally suppressed in PL 111-322, enacted on December 22, 2010 and implemented on January 1, 2012, without an intervening election.

---

[7] The COLAs for 2007, 2013, 2018, and 2022 were unconstitutionally suppressed by the use of a series of bills over time (typically utilizing continuing resolutions), but the last public law in the series for each of the foregoing years purported to "finally" suppress the COLA for that particular calendar year.

[8] For calendar year 2008, President Bush took executive action to partially suppress base pay COLAs for the General Schedule of federal employees ("GS Schedule"), which suppression was in turn applied to Congressional pay for that calendar year, but without an intervening election.

j.  The 2013 COLA was unconstitutionally suppressed in PL 112-175, enacted on September 28, 2012 and PL 112-240, enacted on January 2, 2013, and implemented effective on January 1, 2013, without an intervening election.

k.  The 2014 COLA was unconstitutionally suppressed in PL 113-46, enacted on October 17, 2013 and implemented on January 1, 2014, without an intervening election.

l.  The 2015 COLA was unconstitutionally suppressed in PL 113-235, enacted on December 16, 2014 and implemented on January 1, 2015, without an intervening election.

m.  The 2016 COLA was unconstitutionally suppressed in PL 114-113, enacted on December 18, 2015 and implemented on January 1, 2016, without an intervening election.

n.  The 2017 COLA was unconstitutionally suppressed in PL 114-254, enacted on December 10, 2016 and implemented on January 1, 2017, without an intervening election.

o.  The 2018 COLA was unconstitutionally suppressed in PL 115-56, enacted on September 8, 2017, and PL 115-90, enacted on December 8, 2017, and PL 115-96, enacted on December 22, 2017, and PL 115-120, enacted on January 22, 2018, and PL 115-123, enacted on February 9, 2018, and PL 115-141, enacted on March 23, 2018, and implemented effective on January 1, 2018, without an intervening election.

p.  The 2019 COLA was unconstitutionally suppressed in PL 115-224, enacted on September 21, 2018, after the 2018 election had commenced in multiple states,[9] and implemented on January 1, 2019, thus implementation was without an intervening election.

q.  The 2020 COLA was unconstitutionally suppressed in PL 116-94, enacted on December 20, 2019 and implemented on January 1, 2020, without an intervening election.

r.  The 2021 COLA was unconstitutionally suppressed in PL 116-260, enacted on December 27, 2020 and implemented on January 1, 2021, without an intervening election.

s.  The 2022 COLA was unconstitutionally suppressed in PL 117-43, enacted on September 30, 2021, and PL 117-70, enacted on December 3, 2021, and PL 117-103, enacted on March 15, 2022 and implemented effective on January 1, 2022, without an intervening election.

t.  The 2023 COLA was unconstitutionally suppressed in PL 117-328, enacted on December 23, 2022 and implemented on January 1, 2023, without an intervening election.

u.  The 2024 COLA was unconstitutionally suppressed in PL 118-15, enacted on September 30, 2023 and implemented on January 1, 2024, without an intervening election.

---

[9] Upon information and belief, voting had begun at least as of September 21, 2018 in Minnesota, South Dakota and Wyoming.

16. Each Plaintiff, and all those similarly situated, lost – and current Members continue to lose – significant salary due to the foregoing unconstitutional underpayments.

17. Additionally, each Plaintiff who is a former Member who is qualified for a federal retirement, and all those similarly situated, have had their retirement unconstitutionally reduced due to the unconstitutional suppression of congressional pay, as their retirement pensions are set based on the average pay of the highest three years of salary of their entire period of federal service ("high three").

18. Furthermore, each Plaintiff, and all those similarly situated, who have availed themselves of the federal Thrift Savings Plan ("TSP"), have lost matching funds and the accrued earnings thereon, due to the foregoing underpayments.

19. Plaintiff R. Davis's congressional salary was unconstitutionally underpaid by a total of $563,800.

20. The average of Plaintiff R. Davis's highest three years salaries, upon which his retirement payments have been based, has been $174,000; whereas, Plaintiff R. Davis's high three should have been – and should be – $247,500.  Thus, Representative R. Davis's retirement pay at all times since he began receiving it, has been 42% below its proper level.

21. Additionally, Plaintiff R. Davis participated in the TSP, but due to the unconstitutionally suppressed level of his salary, the employer contributions to his TSP were unconstitutionally reduced.

22. Plaintiff T. Davis's congressional salary was unconstitutionally underpaid by a total of $268,839.

23. The average of Plaintiff T. Davis's highest three years salaries, upon which his retirement payments have been based, has been $166,444; whereas, Plaintiff T. Davis's high three

should have been – and should be – $192,863.  Thus, Representative T. Davis's retirement pay at all times since he began receiving it, has been 16% below its proper level.

24. Additionally, Plaintiff T. Davis participated in the TSP, but due to the unconstitutionally suppressed level of his salary, the employer contributions to his TSP were unconstitutionally reduced.

25. Plaintiff Perlmutter's congressional salary was unconstitutionally underpaid by a total of $753,300.

26. The average of Plaintiff Perlmutter's highest three years salaries, upon which his retirement payments have been based, has been $174,000; whereas, Plaintiff Perlmutter's high three should have been – and should be – $247,500.  Thus, Representative Perlmutter's retirement pay at all times since he began receiving it, has been 42% below its proper level.

27. Additionally, Plaintiff Perlmutter participated in the TSP, but due to the unconstitutionally suppressed level of his salary, the employer contributions to his TSP were unconstitutionally reduced.

28. Plaintiff Crawford's congressional salary has been unconstitutionally underpaid each year of his service and, because Representative Crawford is a current Member of Congress, the underpayment of his backpay continues to accrue.  And because Representative Crawford qualifies for a federal retirement, the suppression of his congressional salary has unconstitutionally reduced the retirement pay which he will be due upon his departure from Congress.

29. Additionally, Plaintiff Crawford participates in the TSP, but due to the unconstitutionally suppressed level of his salary, the employer contributions to his TSP are unconstitutionally reduced.

VI.     Class Action

30. Pursuant to Fed.R.Civ.P. 23(b)(2) & (3) and R.C.F.C. 23(b)(2) & (3), Plaintiffs bring this

    class action, on behalf of themselves individually, and all other similarly situated Members

    and former Members of Congress from the relevant time period.

31. Fed. R. Civ. P. 23(a) and R.C.F.C. 23(a) provide that a cause of action may be maintained

    as a class action if the following elements are met:

    1)   The class is so numerous that joinder of all members is impracticable;

    2)   There are questions of law or fact common to the class;

    3)   The claims or defenses of the representative parties are typical of the claims or

         defenses of the class; and

    4)   The representative parties will fairly and adequately protect the interests of the

         class.

    A.   Class Definitions

32. Plaintiffs seek certification of a class consisting of all persons who have served as Members

    of the U.S. Senate and U.S. House of Representatives since January 1, 1994.

33. Plaintiffs seek certification of a sub-class of the foregoing class consisting of all persons

    from the class who have or may qualify for federal retirement benefits based in whole, or

    in part, on their congressional service since January 1, 1994.

34. Plaintiffs seek certification of a second sub-class of the foregoing class consisting of all

    persons from the class who made (or are making) employee contributions to TSP that

    equaled or exceeded the maximum contribution level at which the automatic employer

    match of such contributions applied.

B.  Numerosity

35. Plaintiffs satisfy the numerosity requirement as the proposed class is so numerous that the joinder of all members would be both impracticable and inefficient, and upon information and belief, consists of approximately 1800 current and former Members of Congress.

36. The proposed class can be identified and located using Defendants' personnel and payroll records, and the putative class members may be informed of the pendency of this action by direct mail, email, telephone contact, and/or published or broadcast notice.

C.  Common Questions of Law and Fact

37. This action involves questions of law and fact common to each of the putative class members, which predominate over any questions affecting only individual members.  The questions of law and fact common to each putative class member arising from Defendants' violations include, but are not limited to, the following questions:

   a.  Whether Defendants violated the Twenty-Seventh Amendment of the U.S. Constitution with respect to the Plaintiffs and putative class members by not paying their salaries as Members, and retirement pay as former Members, based on the cost of living adjustments ("COLAs") they would have received in the absence of the unconstitutional suppression of such COLAs?

   b.  Given that the Members of every Congress since January 1, 1994 have the same salaries (House and Senate), the measure of damages in both backpay and the underpayment of retirement pay is common.

38. The questions set forth above predominate over any tertiary questions limited to only individual Plaintiffs or individual putative class members.

D.  Typicality

39. Plaintiffs' claims are typical and virtually identical to the claims of the other putative class members.  As a result of Defendants' unconstitutional conduct, Plaintiffs have suffered virtually identical injuries as those suffered by other members of the putative class they seek to represent.

E.  Fairness and Adequacy

40. Plaintiffs are adequate representatives of the class they seek to represent, as they are members of the putative class and their interests do not conflict with the interests of the members of the class they seek to represent.  As a result, the putative class members' interests will be fairly and adequately protected by Plaintiffs and their undersigned counsel. Plaintiffs have hired competent attorneys who are experienced in this area of the law and committed to the prosecution of this Action.

F.  Superiority

41.  Based upon considerations of consistency, judicial economy, efficiency, fairness, and equity, a class action is superior to any other available method for the fair and efficient adjudication of this controversy.  Certification of this action as a class action will allow all of the Members and former Members of Congress to prosecute their virtually identical claims for relief within a single forum, simultaneously, and efficiently ensuring the most expedient conclusion possible of the litigation between the parties, without the unnecessary duplication of effort and expense that would occur if these claims were brought individually by each of the putative class members.

42. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for

Defendants and/or substantially impair or impede the ability of class members to protect their interests due to the inherent costs of bringing litigation compared with the potential recovery.

43. Defendants have acted on grounds that apply identically to all members of the class, such that final relief is appropriate respecting the class as a whole.

## COUNT I – Failure to Pay Salary in Violation of the 27th Amendment

44. Plaintiffs incorporate ¶¶ 1-43, *supra*, herein.

45. The Twenty-Seventh Amendment of the U.S. Constitution provides, "No law varying the compensation for the services of the Senators and Representatives shall take effect, until an election of Representatives shall have intervened."

46. The word "varying" in the Twenty-Seventh Amendment means that scheduled congressional salaries (including previously enacted and effective COLAs) may not be either increased or decreased during a given congressional term, nor without an intervening election.

47. Accordingly, Plaintiffs and members of the class are entitled to reimbursement for all unconstitutionally unpaid salary during their tenure in Congress, with appropriate interest, attorneys' fees and costs, and other appropriate damages.

## COUNT II – Failure to Pay Retirement Pay in Violation of the 27th Amendment

48. Plaintiffs incorporate ¶¶ 1-47, *supra*, herein.

49. Due to the persistent and unconstitutional setting and underpayment of congressional salaries, the level of retirement pay of qualifying former Members was reduced in violation of the Twenty-Seventh Amendment.

50. Accordingly, Plaintiffs and members of the sub-class are entitled to reimbursement for all unconstitutionally unpaid retirement benefits following their tenure in Congress, with appropriate interest, attorneys' fees and costs, and other appropriate damages.

**COUNT III – Failure to Pay TSP Employer Match in Violation of the 27th Amendment**

51. Plaintiffs incorporate ¶¶ 1-50, *supra*, herein.

52. Due to the persistent and unconstitutional setting and underpayment of congressional salaries, the amount of the employer match of TSP was reduced in violation of the Twenty-Seventh Amendment.

53. Accordingly, Plaintiffs and members of the sub-class are entitled to reimbursement for all such unconstitutionally unpaid TSP benefits, with appropriate earnings, interest, attorneys' fees and costs, and other appropriate damages.

VII.   Prayer for Relief

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

a. Certifying this Action as a class action pursuant to Fed.R.Civ.P. 23 and R.C.F.C. Rule 23, declaring Plaintiffs as the representatives of the class and sub-classes, and Plaintiffs' counsel as counsel for the class and sub-classes;

b. Declaring Defendants' conduct complained of herein to be in violation of Plaintiffs' rights under the Twenty-Seventh Amendment of the U.S. Constitution;

c. Awarding Plaintiffs and putative class members all monies owed to them as a result of Defendants' underpayment of their salaries as Members of Congress and as former Members of Congress insofar as such former Members qualify for

retirement pay in whole or in part as a result of their congressional service, with all appropriate interest;

d.   Awarding Plaintiffs and putative class members all monies owed to them as a result of Defendants' underpayment of the matching funds associated with the TSP contributions of such Members and former Members of Congress, with all appropriate earnings and interest;

e.   Awarding a tax bump up on any award to offset the tax consequences of a lump-sum payment, calculated annually, in order to make each Plaintiff and putative class member whole;[10]

f.   Ordering the setting of proper retirement status for all Plaintiffs and putative class members for purposes of pay levels;

g.   Entering a protective order to protect personal information of Plaintiffs and/or putative class members; and

h.   Awarding Plaintiffs and putative class members the costs of this action together with reasonable attorneys' fees, and such other and further relief as this Court deems necessary.

Respectfully submitted

/s/ *Kenneth T. Cuccinelli, II*

By Counsel

---

[10] The "tax bump" is an additional damages award to offset higher tax rates being applied to a lump sum award in one year compared to the lower tax rates Plaintiffs would have paid if the salary and/or retirement payments had been made correctly through multiple years.  If salary and/or retirement pay had been correct, lower marginal tax rates would have been applied to the income; thus, a bump up in the damages award is needed to put the Plaintiffs in the same position – after taxes – that they would have been if the Twenty-Seventh Amendment had been complied with.

Kenneth T. Cuccinelli, II
Kenneth T. Cuccinelli, II, Attorney at Law, PLLC
Ph: 804-286-2550
E: KTCLaw@proton.me
Attorney of Record

Earl "Trey" Mayfield, III
tmayfield@jurisday.com
Juris Day, PLLC
10521 Judicial Dr., #200
Fairfax, Virginia 22030
Voice: (703) 268-5600
Facsimile: (703) 268-5602
Of Counsel

*Counsel for Plaintiffs*

Dated: March 7, 2024


## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of March, 2024, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court, is available for viewing and downloading from the ECF system, and will be served by operation of the Court's electronic filing system (CM/ECF) upon all counsel of record.


*/s/ Kenneth T. Cuccinelli, II*
Kenneth T. Cuccinelli, II