IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| RODNEY L. DAVIS, *et al.*<br><br>                    Plaintiffs,<br><br>            v.<br><br>THE UNITED STATES,<br><br>                    Defendant. | No. 24-364<br>(Senior Judge Eric G. Bruggink) |

DEFENDANT'S REPLY IN SUPPORT OF ITS
CROSS-MOTION FOR SUMMARY JUDGMENT

<div style="text-align:right">

STANLEY E. WOODWARD JR.
Associate Attorney General

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

ALBERT S. IAROSSI
Assistant Director

GALINA I. FOMENKOVA
Senior Trial Counsel
United States Department of Justice
Civil Division, Commercial Litigation Branch
P.O. Box 480 | Ben Franklin Station
Washington, DC 20044
(202) 514-5495
galina.fomenkova@usdoj.gov

</div>

February 6, 2026                                        *Attorneys for the United States*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii
ARGUMENT ................................................................................................................................ 1
    I.    Plaintiffs' Illusory Conception Of "Political Accountability" Is Not What The Twenty-Seventh Amendment Demands ............................................................ 1
    II.    The Court Is Not Required To Ignore Plaintiffs' Own Actions And Inactions Because Of The Speech And Debate Clause Or The Purported Rights Of Voters ............................................................................................................. 6
    III.    The Twenty-Seventh Amendment Cannot Void Any Law .................................... 9
        A.    The Twenty-Seventh Amendment Does Not Apply To The Challenged Laws Because They Are Not Laws Varying Congressional Compensation ................................................................ 9
        B.    The Twenty-Seventh Amendment Does Not Prohibit Retroactive Laws ........................................................................................... 11
        C.    The Twenty-Seventh Amendment Only Delays When A Law Goes Into Effect ...................................................................................... 12
    IV.    Plaintiffs' So-Called "Preliminary Issues" Are Meritless .................................... 14
CONCLUSION ........................................................................................................................... 16

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Beer v. United States*,
   696 F.3d 1174 (Fed. Cir. 2012) ............................................................................. 4, 6

*Boehner v. Anderson*,
   30 F.3d 156 (D.C. Cir. 1994) ................................................................................. 2, 9

*CAN Softtech, Inc. v. United States*,
   174 Fed. Cl. 412 (2024) ............................................................................................ 15

*Dillon Tr. Co. LLC v. United States*,
   164 Fed. Cl. 92 (2023) ........................................................................................ 14, 15

*E&I Glob. Energy Servs. v. United States*,
   152 Fed. Cl. 524 (2021) ............................................................................................ 14

*Gentry v. United States*,
   546 F.2d 343 (Ct. Cl. 1976) ....................................................................................... 6

*Massie v. Pelosi*,
   72 F.4th 319 (D.C. Cir. 2023) ..................................................................................... 8

*Oasis Int'l Waters, Inc. v. United States*,
   135 Fed. Cl. 230 (2017) ............................................................................................ 15

*Rangel v. Boehner*,
   785 F.3d 19 (D.C. Cir. 2015) .................................................................................. 7, 8

*Raines v. Byrd*,
   521 U.S. 811 (1997) ..................................................................................................... 7

*United States v. Carlton*,
   512 U.S. 26 (1994) ..................................................................................................... 12

*United States v. Olano*,
   507 U.S. 725 (1993) ................................................................................................... 15

### OTHER AUTHORITIES

U.S. Const., Art. I, Sec. 7, Cl. 2 ........................................................................................ 4

U.S. Const., Amd. XXVII .............................................................................................. 12

2 U.S.C. § 4501 ......................................................................................................... 4, 10

RCFC 54 ........................................................................................................................ 14

Pursuant to Rule 7.2(b)(2) of the Rules of the United States Court of Federal Claims, and ECF 58, defendant, the United States, respectfully submits this reply brief in support of its cross-motion for summary judgment, ECF 51.  As we explained in our cross-motion, although Congress remains free to increase its salary should it so wish, plaintiffs cannot obtain the salary increases they seek through the Court.  Plaintiffs' bid for these salary increases through litigation would actually pervert the very political accountability that all agree the Twenty-Seventh Amendment was ratified to impose.  Plaintiffs' response, surprising in its forthrightness, concedes as much, admitting that it "is entirely possible" that "Congress will be incentivized" to "gam[e] the intervening election requirement" and "feed the public perception of having denied itself a pay raise" while actually receiving the same.  Resp., ECF 54, at 6.  That admission alone should be sufficient to demonstrate that plaintiffs' conception of the Twenty-Seventh Amendment must be wrong; and the remainder of plaintiffs' underlying arguments confirm as much.  Put simply, plaintiffs misperceive both the purpose and effect of what the Twenty-Seventh Amendment says and does.

## ARGUMENT

I.  Plaintiffs' Illusory Conception Of "Political Accountability" Is Not What The Twenty-Seventh Amendment Demands

The parties agree that the purpose of the Twenty-Seventh Amendment is political accountability.  *See*, *e.g.*, Resp. 11 (describing "the concern" "at the Twenty-Seventh Amendment's core" as "the right of voters to hold their congressmen accountable by forcing Congress to pass compensation-varying bills before an election occurs"); *id*. at 12 ("The Twenty-Seventh Amendment's intervening election requirement is the direct mechanism to hold Congress electorally accountable for its compensation decisions."); *id*. at 29 ("The Twenty-Seventh Amendment's intervening election requirement exists so voters may use their votes in

the intervening election to hold their Representatives (and the 1/3 of Senators up for election at the same time) accountable for any changes made to congressional compensation."); *id*. at 35 ("It is beyond argument that the purpose of the Twenty-Seventh Amendment's intervening election requirement is so voters—all voters—have the opportunity to use their ballots in the next upcoming election to hold their Representatives and Senators accountable for congressional votes that vary congressional compensation.") (all emphasis removed).  But despite plaintiffs' repeated and full-throated endorsement of political accountability *in theory*, their arguments would effectively eradicate such "accountability" in practice.

    That is, under plaintiffs' conception of the Twenty-Seventh Amendment, although every vote is necessarily cast after a law varying compensation is passed,[1] not a single vote matters because the incoming Congress is stuck with whatever law the outgoing Congress passed throughout the entirety of its duration.  But the act of voting is a means to an end of political accountability in a representative government; not as plaintiffs would have it, itself the political accountability in a vacuum.  Plaintiffs offer no explanation or response to what a newly-elected Congress can actually *do* about an electorally-despised law, even if opposition to that law got

---

[1] Plaintiffs' arguments with respect to early voting also miss the point by focusing on what an "election" means in the abstract. *See* Resp. 29–36. But the correct inquiry for the Twenty-Seventh Amendment is what is the *minimum* required for an election to have *intervened*—there is, of course, no maximum imposed by the Amendment; multiple elections could intervene between the passage of a law varying congressional compensation and when it goes into effect and the Twenty-Seventh Amendment would pose no hurdle to that law. *See Boehner v. Anderson*, 30 F.3d 156, 162 (D.C. Cir. 1994).  Thus, the criticality of the statutorily-defined Election Day—a day on which both sides agree *an election is taking place*—is that it is, therefore, sufficient to meet that intervention minimum. *Id*.

2

them elected.[2]  Seemingly, plaintiffs' answer is *nothing*.  Even if we assume that plaintiffs would agree that the first newly-elected Congress could pass a new law reversing the electorally-despised law enacted by the outgoing-Congress, if that law were to take effect upon yet another intervening election, *i.e.*, with the second-elected Congress, that would mean that political accountability—in the sense of actually representing the voters' demands—would require *two* intervening elections.  But that is not what the Amendment says, and it makes no sense in the context of a provision that, all agree, was designed to increase Congress's accountability (*i.e.* responsiveness) to voters on matters of congressional compensation, not decrease it.

Plaintiffs' resulting perversion of the Twenty-Seventh Amendment as actually insulating, in practice, the newly-elected Congress from reversing the laws passed by the outgoing Congress most likely stems from their continued misconception of the Amendment (and this litigation) as being a flavor of the Article III Compensation Clause (and the associated judicial pay cases). Plaintiffs argue that the "distinction between judicial and congressional compensation protections … is primarily temporal," because "[t]he Twenty-Seventh Amendment protects only against any particular Congress changing (up or down) its own pay during the same term of Congress, whereas reductions in judicial pay are always forbidden."  Resp. 21.

In fact, the differences between the Twenty-Seventh Amendment and the Article III Compensation Clause are more numerous and go far deeper.  For example, the focus of the Article III Compensation Clause is the compensation received by judges itself, whereas the

---

[2] Plaintiffs point to a lack of cases discussing that, under the Twenty-Seventh Amendment, the next Congress must acquiesce to a law varying congressional compensation.  Resp. 7 n.6.  It is not clear where plaintiffs believe that observation goes.  It is true, the Twenty-Seventh Amendment has not been extensively litigated and many of the issues presented in this case are matters of first impression for the Court.  But the acquiescence of the next Congress in laws varying congressional compensation comes from the text of the Amendment itself—that is what the intervening election (and its accompanying political accountability) *does*.

Twenty-Seventh Amendment only addresses the effective dates of specifically "law[s] varying" congressional compensation.³ But most fundamentally, the two constitutional provisions exist for directly inverse purposes. The core purpose of the Article III Compensation Clause is to *insulate* judges from political accountability, *i.e.*, *prevent* that which the Twenty-Seventh Amendment was ratified to ensure. *See Beer v. United States*, 696 F.3d 1174, 1176 (Fed. Cir. 2012) (Through the "constitutional protection for judicial compensation[,] [t]he framers of the Constitution protected judicial compensation from political processes.").

Moreover, as we explained in our cross-motion, plaintiffs' conception of the Twenty-Seventh Amendment does not just render political accountability illusory, it also invites Congress to be less forthright about compensation decisions, *i.e.*, it *decreases* accountability. *See* Cross-MSJ at 9–10. Startlingly, in their response, plaintiffs not only do not dispute these incentives, but embrace them, openly admitting that it "is entirely possible" that "Congress will be incentivized to … gam[e] the intervening election requirement" going forward if their suit succeeds. Resp. 6–7. That admission alone should defeat their claim. Whatever else the Amendment means, it *cannot* be an aid to misleading voters on matters of congressional pay; and plaintiffs' lawsuit, which they admit would facilitate the possibility of such deception, therefore, must be rejected.

Plaintiffs' remaining responses to the arguments we made in our cross-motion that a

---

³ Plaintiffs' fundamental misapprehension of this difference is also revealed by their suggestion that the President's reduction of the General Schedule COLA—which is one of the caps in the formula for congressional pay, 2 U.S.C. § 4501(2)(B)—also must comply with the Twenty-Seventh Amendment. Resp. 14 n.10. But although the President's determination to reduce the General Schedule COLA would have an impact on the quantum of congressional compensation, there can be no question that the President does not do so through a "law," which, as plaintiffs recognize elsewhere, requires bicameralism and presentment, *see* Resp. 8; *see also* U.S. Const., Art. I, Sec. 7, Cl. 2. As such, the Twenty-Seventh Amendment has nothing to say about when the President makes that determination.

4

judgment in their favor would undermine the Constitution either miss the point or concede it.

First, plaintiffs argue that repeating a constitutional violation is no defense, proffering as an example that "[i]f Congress passes a law abridging the First Amendment, the Government becomes liable for every violation, even if Congress reenacts the same unconstitutional law every two years." Resp. 7. But that example is inapt because constitutionality under the First Amendment does not turn on political accountability for Congress—that is not what the First Amendment is about. By contrast, the fact that every Congress during the relevant time period has left the prior COLA rejections in place, and, indeed, affirmatively continued the COLA rejections going forward, *does* speak to the political accountability of intervening elections vis-à-vis those compensation decisions that is the purpose of the Twenty-Seventh Amendment. And contrary to plaintiffs' suggestion, the Amendment does *not* restrict Congress's policy choices with respect to how Congress varies (or not) its pay, Resp. 7, or the quantum of compensation itself; the Amendment only affects the effective date of certain laws.

Second, plaintiffs do not dispute that the Article I Compensation Clause contemplates uniformity of compensation paid to Members, or that by pursuing these salary increases through this Court—rather than using their own legislative powers—plaintiffs threaten that uniformity. *See* Cross-MSJ at II.B. Instead, plaintiffs suggest that this disruption is of no moment and that it "does not implicate the Constitution's structural concerns" because, for example, individuals could donate their salary increases back to the Treasury or refuse to accept the Government's checks. Resp. 7. Plaintiffs' flippancy is misplaced. A judicial judgment that results in undermining an aspect of the constitutional structure—even if it does so allegedly in service of another aspect of that constitutional structure—is one that ultimately does *not* "protect[] the constitutional interests of both the voters and the Congress." *Contra* Resp. 7.

5

And third, plaintiffs' argument that "Federal funds may not be limitless, but Congress is constrained by constitutional limitations as to how those funds may be spent," Resp. 8–9, again, misperceives the Twenty-Seventh Amendment and is non-responsive. Unlike limitations restricting the substance of Congress's policy choices—*e.g.*, Congress cannot trade-off spending by paying sitting judges less because of Article III, *Beer*, 696 F.3d at 1185–86; or by denying equal protection of the laws, *Gentry v. United States*, 546 F.2d 343, 354 (Ct. Cl. 1976)—the Twenty-Seventh Amendment does not constrain the quantum of congressional compensation. Congress absolutely *can*, including under the Twenty-Seventh Amendment, choose to put taxpayer dollars to priorities other than increasing its own pay.

II. The Court Is Not Required To Ignore Plaintiffs' Own Actions And Inactions Because Of The Speech And Debate Clause Or The Purported Rights Of Voters

Plaintiffs do not dispute that whatever injury they could lay claim to have suffered here, they either directly voted in favor of the challenged laws, or made no effort—through the legislative process—to prevent that injury from occurring. Nor can they dispute the fundamental inequities of subsequently pursuing litigation to redress harms that they themselves caused, or at minimum, made no attempt to mitigate. *See* Cross-MSJ at Section III.C. Instead, plaintiffs attempt to invoke their immunity under the Speech and Debate Clause and the purported rights of "the voting public[] … to elected representatives paid in accordance with the Constitution." Resp. 9–17. These arguments are a non sequitur.

First, to be sure, Members of Congress enjoy immunity from suit under the Speech and Debate Clause. But the United States did not sue plaintiffs here, plaintiffs sued the United States. And just as a party cannot, for example, assert an advice of counsel defense without waiving the attorney client privilege that would otherwise immunize that advice from discovery, plaintiffs cannot come to court to challenge laws they themselves enacted—without any

6

objection to the challenged provisions—and hide from the Court's consideration of that underlying fact. Plaintiffs cite no case where the Speech and Debate Clause was wielded by plaintiff-Members as a sword rather than by defendant-Members as a shield.

Second, regardless of whether the Twenty-Seventh Amendment is "a constitutional right belonging primarily to voters," Resp. 15, *voters* are not plaintiffs in this litigation. Waiving the rights of third parties is, consequently, not at issue, because plaintiffs are—and indeed for standing purposes must be—purporting to vindicate their *own* rights and interests in their personal salaries through this litigation, *not* the rights or interests of the general body politic. *See Raines v. Byrd*, 521 U.S. 811, 818–21 (1997) (distinguishing between personal injuries, such as loss of salary, and institutional injuries for legislative standing because standing requires an injury particularized to the plaintiff). Plaintiffs do not contend—nor could they—that individuals cannot waive their own constitutional rights.

Nor are plaintiffs correct that if they are precluded from obtaining redress in court here, the Constitution writ large would be threatened because Congress would have license to "nullify … every other provision" thereof. Resp. 14. If Congress were to try to limit the rights of the public under the First, Second, Fourth Amendment, etc., and the members of the public whose rights were affected challenged those laws in court, there would be no argument that the plaintiffs in those hypothetical cases were the cause of their own injury. For example, unlike the plaintiffs here, there was no question that the judges challenging the denial of COLAs in *Beer* neither created those denials, nor, other than through litigation, could lift them. But as far as how Congress regulates itself, it is *already* the case that Members' ability to seek redress in the courts for alleged internal constitutional violations is limited, including by the very Speech and Debate Clause they seek to invoke here. Thus, a Member already cannot, for example, bring a

7

Fifth Amendment Due Process challenge to their censure, *Rangel v. Boehner*, 785 F.3d 19, 21, 22 (D.C. Cir. 2015), or challenge the requirement, or associated penalty, of wearing a mask during the COVID-19 pandemic on constitutional grounds, including both the First and Twenty-Seventh Amendments, *Massie v. Pelosi*, 72 F.4th 319, 320, 321 (D.C. Cir. 2023).

      Finally, plaintiffs argue that estoppel cannot apply because the challenged provisions were part of omnibus bills and the United States has not suffered any detrimental reliance. Resp. 16–17. But, as plaintiffs acknowledge, it is Congress's prerogative to have omnibus bills instead of single-subject legislation. Resp. 10. Thus, the fact that the challenged provisions were part of large, multi-faceted bills is *also* an injury plaintiffs caused themselves, but therefore no answer to the overall equities here.[4] And the United States indisputably *did* suffer detrimental reliance—the Government relied on the expectation that Members of Congress would not intentionally pass unconstitutional legislation. And, moreover, as we explained in our cross-motion, the United States has no choice but to continue that reliance, as it has no ability to prevent plaintiffs from creating this same injury in the future. Cross-MSJ at 22–23. Plaintiffs' sole response to that argument is to admit that it "is entirely possible" that they would continue to do so. Resp. 6.

      At bottom, the unique feature of this case is that both the laws being challenged and the constitutional provision at issue are confined to Congress managing *itself*. And Members, therefore, have both the privilege (not shared by, *inter alia*, judges or other plaintiffs in other constitutional challenges) and the responsibility to seek redress for whatever harms they believe

---

    [4] Plaintiffs point out that they may have voted for the overall bill despite the challenged provisions rather than because of them, and also that they sometimes voted "no" on the overall bill. Resp. 10–11, 17 & nn.8, 9, 11. But the more salient fact is that plaintiffs never suggest that they tried to stop specifically the challenged provisions through the legislative process.

they have caused themselves through the same legislative process that caused them. But the Court can, and should, reject plaintiffs'—now admitted—invitation to permit them to "gam[e]" the constitutional structure of their compensation into getting a pay raise they never even attempted to vote for though the courts. Resp. 6.

III. The Twenty-Seventh Amendment Cannot Void Any Law

    A. The Twenty-Seventh Amendment Does Not Apply To The Challenged Laws Because They Are Not Laws Varying Congressional Compensation

At the outset, plaintiffs accuse the Government of "invit[ing] the Court to ignore the Amendment's plain text, and rewrite the Amendment as" "[n]o law, *increasing the compensation* for the services …" Resp. 5 (emphasis in original). That accusation is baseless. Although, in fact, an open question exists as to whether the Amendment applies to laws decreasing congressional compensation, *see Boehner v. Anderson*, 30 F.3d 156, 162 (D.C. Cir. 1994) (raising the question, but "express[ing] no opinion upon that possibility"), our cross-motion did not raise such an argument because the Court need not resolve that question to decide this case.[5] That is because, as our cross-motion did explain, the challenged laws do not "vary[] [congressional] compensation"—either increasing or decreasing—rather they prevent variation from taking place. *See* Cross-MSJ at Section III.A.

Plaintiffs make two arguments in response: one, that changing the formula in the Ethics Reform Act would constitute varying congressional compensation, Resp. 18–20; and two, that

---

[5] We did, however, explain why plaintiffs' reading of the historical record is (a) contrary to what that record actually says about the origins of the Twenty-Seventh Amendment and, more fundamentally, also (b) illogical, because if the Amendment does apply to reductions in pay, it could only exacerbate the concern about performative salary reductions, not alleviate it. Cross-MSJ at 6–9. Plaintiffs offer no explanation as to how the block quotes they recite in response either relate to the Twenty-Seventh Amendment at all (as opposed to the Federalists prevailing over the Anti-Federalists with respect to the Article I Compensation Clause), or disprove our observations. *See* Resp. 5–6.

per *Beer*, "COLAs are part of—not an increase in—[] pay," Resp. 20–21. These two arguments are, in fact, the same argument, and it misses the mark.

To be sure, Congress can, and has, used a formula to set its future compensation. *See* 2 U.S.C. § 4501(2). And equally so, a law changing that formula would likely be subject to the Twenty-Seventh Amendment. Thus, for example, if Congress passed a law amending the Ethics Reform Act to eliminate the 0.5% reduction to the percentage calculated directly from the Employment Cost Index, or passed a law amending § 4501, to strike subsection (2)(B) from the adjustment formula (which limits congressional COLAs through the General Schedule COLAs), plaintiffs' argument could have force. But none of the challenged laws in this case did *anything* to change the *formulas* in the Ethics Reform Act or § 4501.

In substance, plaintiffs' argument regarding the formula appears to be a re-imagining of their prior "vesting" theory—which, at least by name, they have otherwise abandoned in their response. And it, therefore, collapses into their second argument, that the COLA increases are not increases at all and so preventing the increases from going into effect is a decrease (and a variation for purposes of the Twenty-Seventh Amendment) in congressional compensation. But we explained in our cross-motion why this is incorrect. Plaintiffs' "vesting" paradigm, including their related contention that all future COLAs became part of congressional compensation upon passage of the Ethics Reform Act, so those future COLAs are not an increase in pay when (or if) they go into effect, is not applicable to Congress. *See* Cross-MSJ at Section III.A.

Although plaintiffs continue to insist that "*Beer* dictates [] that COLA-blocking legislation is a reduction in congressional pay," Resp. 20, they offer *no* justification for that conclusion. In particular, they offer *no* response to the fact that the analysis that drove the *Beer* Court's conclusion is, on its face, not applicable to Members of Congress because it is premised

10

on the unique constitutional protections enjoyed by judges under Article III. *See* Cross-MSJ at 15–18. That silence alone speaks volumes and the most straightforward resolution of this case is that the challenged laws at issue do not trigger the Twenty-Seventh Amendment at all.[6]

At bottom, the practical reality of the Twenty-Seventh Amendment is that if a newly-elected Congress wants to receive the same compensation as the outgoing Congress—whether, as here, because the COLA is not permitted to go into effect, or per the hypothetical in Section I, because a newly-elected Congress wants to reverse the changes the outgoing Congress tried to make in response to the election results—it can do so and the Amendment is not implicated.

B. The Twenty-Seventh Amendment Does Not Prohibit Retroactive Laws

In the alternative, we also explained in our cross-motion that even if the challenged laws are subject to the Twenty-Seventh Amendment, plaintiffs are still not entitled to any damages because even if the effective date of these laws is delayed, they become valid retroactive laws. Cross-MSJ at Section III.B. Plaintiffs respond that "[t]he Government's theory that Congress could retroactively vary its pay would vitiate one of the Amendment's clear purposes" and that it "ignores the Twenty-Seventh Amendment's plain language forbidding *any* Congress from changing its *own* pay—ever." Resp. 22 (emphasis in original). But plaintiffs offer no explanation as to *what* language in the Amendment prohibits a law of retroactive application because there is none.

---

[6] That the Twenty-Seventh Amendment is triggered only by laws varying congressional compensation is particularly salient to plaintiffs' response regarding specifically the 2025 COLA increase. Plaintiffs argue that although that increase was first stopped in September 2024, there remains a violation because that initial COLA suspension only lasted until December 2024, and then had to be extended by subsequent laws that were passed after Election Day. Resp. 35–36. But even if the initial rejection of a COLA for any given year were to constitute a variation of congressional compensation, there can be no question that by the time these subsequent laws were enacted, they were *not at that point* varying the state of congressional compensation for 2025, because the COLA increase had already been suspended with the passage of the first law.

The Amendment states that "[n]o law, varying the compensation for the services of the Senators and Representatives, shall take effect, until an election of Representatives shall have intervened." U.S. Const., Amd. XXVII. Thus, the Amendment imposes an intervening election requirement between the passage and effective date of certain laws. But the Amendment's plain text imposes no restrictions on the *substance* of a law varying congressional compensation. That is, the Amendment's plain text poses no hurdle to a retroactive law that is passed before an election, so long as it goes into effect after an election. *Cf.* Resp. 22 n.17.

Plaintiffs' further suggestion—indeed the crux of their objection—that the retroactive nature of such a law "would vitiate" the Amendment's purpose, ultimately highlights the parties' dispute over what political accountability means here. The Twenty-Seventh Amendment, in fact, does *not* "forbid[] any Congress from changing its own pay[,] ever," *contra* Resp. 22 (emphasis removed); what it does do, is impose the oversight of a second Congress before any such change goes into effect.[7] And that oversight remains regardless of whether the specific law in question is retroactive or prospective in its substantive application.

C. The Twenty-Seventh Amendment Only Delays When A Law Goes Into Effect

Finally, plaintiffs suggest that the Court should calculate damages as if the challenged laws never happened and compound every COLA increase year over year because it is just easier to do the math that way. Resp. 23–29 & n.18. But computational complexity is not a canon of constitutional interpretation.

---

[7] Plaintiffs also argue that Congress cannot retroactively reduce pay, because they have a "constitutionally-protected property interest[] in their wages." Resp. 22 n.16 (collecting cases). But as we noted in our cross-motion, the Supreme Court has, for example, "repeatedly [] upheld" the constitutionality of "retroactive tax legislation." *United States v. Carlton*, 512 U.S. 26, 30 (1994) (collecting cases); *see* Cross-MSJ at 20–21. And there would certainly be no argument that plaintiffs lacked notice about their pay freezes here. In any event, plaintiffs' present suit is premised only on the Twenty-Seventh Amendment.

Even assuming that the Twenty-Seventh Amendment applies to the challenged laws, and that they were put into effect without an intervening election, plaintiffs themselves purport to identify at least "four available interpretive options":  (1) the law is void ab initio and denial of the COLA increase is deemed to have never occurred; (2) the law is entirely retroactive, and so no COLA increase is ever paid; (3) the law is delayed in its effect, such that the COLA increase is paid until the seating of the next Congress, whereupon it stops compounding into the baseline to which future COLA increases are applied; and (4) the law is allowed to go into effect in name only, but does not do anything as a practical matter because the year in which it was preventing the COLA increase has ended.  Resp. 24–25.  Having identified these four options, plaintiffs simply proclaim that "[t]he Government's proposed alternatives make clear why the COLA-blocking laws are void ab initio," Resp. 25, but they offer no explanation of that purported "clarity."  And while it is certainly obvious why plaintiffs would *want* the challenged laws to simply disappear, it is not at all "clear" why an Amendment that, on its face, only controls the effective date of a law, would render any law a nullity instead of merely delaying, as necessary, that effective date.  Nor does it follow—where plaintiffs themselves presume that the salary adjustments continue to build on the salaries of years past—that there would be nothing for the laws to do once the applicable year is over.

Thus, as we explained in our cross-motion, to the extent that the Court finds that plaintiffs are entitled to recover anything at all, that recovery should not compound every COLA increase year over year, but at minimum, should re-set the baseline to which those increases are applied with every new Congress.  The details of the resulting math—whatever its ultimate complexity—are best left to future proceedings, should they become necessary.

13

IV.  Plaintiffs' So-Called "Preliminary Issues" Are Meritless

Plaintiffs also purport to "bring two preliminary issues to the attention of the Court." Resp. 1. Both are meritless. First, plaintiffs "object to the Government treating its brief … in its entirety [] as both a brief in opposition and as its own motion for summary judgment," and purport to arbitrarily subdivide our cross-motion into what plaintiffs have decided should constitute just an opposition to plaintiffs' motion and separately, what plaintiffs have decided should constitute just the cross-motion. *Id*. Plaintiffs further suggest that this arbitrary division they have concocted should "restrict" the Court's "consideration of the Government's final reply." *Id*. Plaintiffs offer no legal or factual basis for their request, and there is none. Plaintiffs' objections notwithstanding, our brief—in its entirety—is both our cross-motion and opposition to plaintiffs' motion for summary judgment, in that, for all the reasons stated, judgment should not be entered for plaintiffs because it should be entered for the United States, and vice versa. Our reply in support of our cross-motion is, therefore, a proper reply, and not an "attempt to obtain a sur-reply." *Contra* Resp. 1.

Second, plaintiffs argue that the application of the statute of limitations to plaintiffs' claims is "a live argument to which the Government has waived any response." Resp. 1–4 (capitalization omitted). Plaintiffs are again wrong. To be sure, Rule 54(b) *permits* the Court, where "justice [so] requires," to revisit an interlocutory order. *Dillon Tr. Co. LLC v. United States*, 164 Fed. Cl. 92, 94–95 (2023) (quoting *E&I Glob. Energy Servs., Inc. v. United States*, 152 Fed. Cl. 524, 532–33 (2021)). But that does not mean that plaintiffs can simply keep re-briefing the same arguments that were previously fully-briefed, litigated, and rejected by the Court, as if the prior proceedings never happened; or that a defendant is required, upon pain of

14

forfeiture (much less waiver),[8] to do the same.

To the contrary, although the Court has wider discretion to revisit an interlocutory order under Rule 54(b) than the standards for revisiting a final judgment under Rule 59, that lower bar is still "not an invitation for litigants to treat interlocutory decisions as mere first drafts, subject to revision and reconsideration at a litigant's pleasure" or "to give an unhappy litigant an additional chance to sway the court." *Dillon*, 164 Fed. Cl. at 94–95 (collecting cases). "Rather, reconsideration [under Rule 54(b)] is available as justice requires, which typically means that the court patently misunderstood a party; made a decision outside the adversarial issues that the parties presented to the court; made an error not of reasoning, but of apprehension; or that controlling or significant changes in the law or facts have occurred since the issue was submitted to the Court"—none of which plaintiffs made any attempt to argue in their opening motion. *CAN Softtech, Inc. v. United States*, 174 Fed. Cl. 412, 416 (2024) (citation and quotation marks omitted); *see Oasis Int'l Waters, Inc. v. United States*, 135 Fed. Cl. 230, 247 (2017) ("Although courts have the power to revisit their own prior decisions, the United States Supreme Court has cautioned that as a rule courts should be loath[] to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice.") (quotation marks omitted).

In short, an issue is not live, and a defendant cannot forfeit or waive its position on an issue that the Court has already (correctly) decided in its favor and to which plaintiffs have not properly raised (much less substantiated) a reconsideration request.

---

[8] Although the two are often used interchangeably, waiver and forfeiture are distinct and different concepts. "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (quotation marks omitted). Plaintiffs claim waiver and probably mean forfeiture, but regardless, neither attaches here.

15

## CONCLUSION

For the foregoing reasons and those in our cross-motion, we respectfully request the Court enter judgment in favor of the United States.

Respectfully submitted,

STANLEY E. WOODWARD JR.
Associate Attorney General

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. MCCARTHY
Director

ALBERT S. IAROSSI
Assistant Director

s/ Galina I. Fomenkova
GALINA I. FOMENKOVA
Senior Trial Counsel
United States Department of Justice
Civil Division, Commercial Litigation Branch
P.O. Box 480 | Ben Franklin Station
Washington, DC 20044
(202) 514-5495
galina.fomenkova@usdoj.gov

February 6, 2026                      *Attorneys for the United States*